IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| LANCER INSURANCE CO., | : | |
| | : | |
|     Plaintiff, | : | |
| | : | 5:09-CV-302 (CAR) |
| v. | : | |
| | : | |
| JACK LEWIS HITTS, | : | |
| WINFIELD KINGMAN BROAD, JR., and | : | |
| AMERISURE MUTUAL INSURANCE CO., | : | |
| | : | |
|     Defendants, | : | |
| | : | |

*ORDER ON MOTION FOR SUMMARY JUDGMENT*

    Before the Court is a Motion for Summary Judgment [Doc. 15] filed by Plaintiff Lancer Insurance Company ("Lancer"). The pending declaratory judgment action will construe the terms of an insurance policy ("Lancer Policy") issued by Lancer to Mark Mannes d/b/a Mark Mannes Trucking ("Mannes Trucking"). Defendants Jack Hitts, Amerisure Mutual Insurance Company ("Amerisure"), and Winfield Broad are all parties to underlying litigation in tort for an accident involving a tractor trailer truck leased to Mannes Trucking. Neither Mannes Trucking nor Lancer are parties to the underlying litigation, but Lancer seeks to ascertain any rights and obligations it may have with respect to the underlying litigation under the policy it issued to Mannes Trucking. Defendants have responded [Docs. 25, 33] and Lancer replied [Doc. 36], so the Motion is now ripe for review. As a matter of law, the Lancer Policy does not provide coverage for Jack Hitts in the underlying litigation, because he cannot be considered an insured in his own right and has no viable alternate theory of coverage. Accordingly, Lancer's Motion for Summary Judgment is hereby **GRANTED.**

**BACKGROUND**

This declaratory judgment action arises out of a personal injury suit also before the Court. See Broad v. Hitts et al, 5:08-cv-366-CAR. Defendant Broad is the plaintiff in that case. Therein he alleges that Jack Hitts caused a collision with his parked vehicle at a loading dock in Peach County, Georgia. Both vehicles were tractor trailer trucks. The underlying litigation, therefore, is a suit in tort in which Broad seeks to recover for injuries he claims to have suffered as a result of the accident.

At the time of the collision, Jack Hitts drove a 2002 Freightliner tractor, which he had leased to Mannes Trucking. He obtained use of the truck himself through a lease arrangement with Red Star Express, the actual owner of the tractor. Hooked up to the tractor was a 1995 Great Dane trailer owned by Ron Hitts Trucking. Amerisure provides liability coverage for Ron Hitts d/b/a Ron Hitts Trucking. Ron Hitts dispatched the load, which was transported under the United States Department of Transportation ("USDOT") interstate operating authority permit of Mannes Trucking. Ron Hitts is Jack Hitts's nephew and Mark Mannes's son-in-law.

Lancer wrote an insurance policy that provided coverage for a fleet of trucks leased by Mannes Trucking. The Policy provided that Lancer would pay all sums any "insured" legally must pay as damages because of bodily injury or property damage caused by an accident involving a covered "auto". The Policy identifies as insureds for any covered auto Mannes and anyone else while using with Mannes's permission a covered auto he had owned, hired, or borrowed.

For purposes of the Policy, an "[a]uto" is defined as "a land motor vehicle, 'trailer' or semitrailer designed for travel on public roads . . . ." The term "'Trailer' includes [a]

semitrailer . . . ." Covered autos must be "specifically described autos," which means they are those autos described in the pertinent declarations section of the Policy for which a premium charge is shown. Liability coverage, however, extends to any trailers attached to a covered tractor. Only a 2000 Freightliner tractor and a 2002 Stoughton trailer are declared in the Policy as covered autos. As previously noted, it is undisputed that Jack Hitts was driving a 2002 Freightliner tractor and pulling a 1995 Great Dane trailer at the time of the accident, neither of which is described or declared in the Lancer Policy.

In addition, the Lancer Policy includes a mandatory federal endorsement, known as an MCS-90, which requires that the insurer provide public liability coverage in certain cases up to the federal minimum liability limits regardless of whether the claim involves a listed vehicle. Specifically, the MCS-90 states that the insurer will pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or the use of motor vehicles . . . ." This obligation is in effect "regardless of whether or not each motor vehicle is specifically described in the policy . . . ." Further, "no condition, provision, stipulation or limitation contained in the policy, this endorsement or any other endorsement therein, or violation thereof shall relieve" Lancer of liability or its obligation for "payment of any final judgment within the limits of liability herein described irrespective of the financial condition, insolvency or bankruptcy of the insured."

Notwithstanding the foregoing verbiage, however, the endorsement goes on to state that "all terms, conditions and limitation in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company." The insured, moreover, must "reimburse [Lancer] for any payment made by [Lancer] on account of any

accident, claim, or suit involving a breach of the terms of the policy, and for any payment that [Lancer] would not have been obligated to make" under the Policy absent the endorsement. The parties do not dispute that interpreting an MCS-90 endorsement is a question of federal law.

Jack Hitts, Red Star Express, and Amerisure are the only parties Broad named as defendants in the underlying litigation. But Broad now maintains that both Mannes Trucking and Ron Hitts may be held liable for the accident on a theory that named party Jack Hitts functioned as their agent at that time. Apparently, the statute of limitations has run as to any other parties who might otherwise have been joined in the underlying litigation.

Lancer filed this declaratory judgment action seeking a determination by the Court of its rights and obligations under the Lancer Policy. Because the actual truck driven by Hitts was not listed on the Lance Policy, Lancer contends that the accident did not involve a covered auto. To the contrary, Defendants Hitts, Amerisure, and Broad assert that the MCS-90 endorsement functions to bring the unlisted truck involved in the accident under the Lancer Policy's coverage. Lancer responds that although the MCS-90 endorsement extends coverage to include the unlisted vehicles of insureds, Jack Hitts cannot be considered an insured under any permissible construction of the Lancer Policy.

The question presented on summary judgment, therefore, requires the Court to determine whether Jack Hitts must be considered an "insured" under the Policy at the time of the accident. If he was an insured, Lancer may be liable for his actions in the underlying litigation. If he was not, Lancer has no duty to defend or indemnify Hitts as to any potential judgment in the underlying litigation.

## LEGAL STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). The substantive law applicable to the case determines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Id. at 247-48. Thus, summary judgment may be granted if there is insufficient evidence for a reasonable jury to find for the nonmoving party or, in other words, if reasonable minds could not differ on the verdict. See Id. at 249-52.

In reviewing a motion for summary judgment, the Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the Court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The movant carries the initial burden and must show the court that "an absence of evidence to support the nonmoving party's case" exists to sustain its motion. Celotex, 477 U.S. at 325. "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party must then go beyond the pleadings and present specific evidence that raises a genuine issue of material fact (i.e., evidence that would support jury verdict), or

otherwise show that the moving party is not entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than conclusory allegations or legal conclusions and may include affidavits, depositions, and admissions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). "Mere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof." Celotex, 477 U.S. at 323.

A district court does not need to "review all of the evidentiary materials on file," *sua sponte*, however, it "must ensure that the motion itself is supported by evidentiary materials" and, at the least, "must review all of the evidentiary materials submitted in support of the motion for summary judgment." 5800 SW 74th Ave. 363 F.3d at 1101-1102.

## DISCUSSION

Since Mannes Trucking is not a named party in the underlying litigation, the question presented is whether Jack Hitts may be considered an insured under the Lancer Policy in those proceedings based on the MCS-90 endorsement. The substance and context of the federal regulations on point limit the construction of the term "insured" to named motor carriers. As such, Jack Hitts may not be considered an insured under the Lancer Policy. The MCS-90 endorsement does not function to bring the unlisted tractor Jack Hitts drove at the time of the accident under the Lancer Policy's coverage in this circumstance, even though it can in some

cases produce that effect. Lancer is only liable to pay any judgment obtained against named insured and motor carrier Mannes Trucking. Since neither Lancer nor Mannes Trucking are named parties to the underlying litigation, Lancer has no duty to defend that lawsuit.

The Federal Motor Carrier Safety Administration ("FMCSA") arm of the USDOT has mandated that all motor carriers transporting non-hazardous materials in interstate commerce maintain proof of financial means of at least $750,000.00 for purposes of satisfying public liability claims. 49 U.S.C. § 31139(b)(2). A motor carrier may meet this requirement by obtaining an insurance policy that includes an MCS-90 endorsement form, as promulgated by the USDOT. 49 C.F.R. § 387.7(d). Mannes Trucking chose this method for proving its financial responsibility through the Lancer Policy. The MCS-90 endorsement provided that Lancer would pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or the use of motor vehicles" up to the federal minimum liability limits "regardless of whether or not each motor vehicle is specifically described in the policy . . . ."

In the context of the MCS-90 endorsement, the federal regulations define "insured" as "the motor carrier named in the policy of insurance, surety bond, endorsement, or notice of cancellation, and also the fiduciary of such motor carrier." 49 C.F.R. § 387.29. The plain language of this definition unambiguously indicates that only the named motor carrier in the policy is intended to function as an insured for purposes of a MCS-90 endorsement. Although the actual 2002 Freightliner tractor Jack Hitts drove is not specifically listed in the Lancer Policy, the MCS-90 endorsement nonetheless operates to treat it like a covered auto for purposes of public liability because Mannes Trucking leased it at the time of the accident.

The MCS-90 endorsement under its plain terms, however, would obligate Lancer to pay only those judgments against the named insured and motor carrier, Mannes Trucking, for Jack Hitts's liability while driving the Freightliner tractor. It is undisputed that Jack Hitts is not a motor carrier. The load he carried at the time of the accident was licensed under the USDOT interstate operating authority permit of motor carrier Mannes Trucking. Nor is he a named insured under the Lancer Policy. Again, Mannes Trucking is the sole named policyholder. As such, Jack Hitts cannot be considered an insured in construing the attached MCS-90 endorsement with respect to the Lancer Policy. Mannes Trucking, which Defendant Broad did not name as a party to the underlying litigation, was both the motor carrier for purposes of the MCS-90 endorsement and the named insured under the Lancer Policy. Thus, Lancer has no duty to defend the underlying litigation, which names neither Lancer nor Mannes Trucking.

An alternative basis for coverage under the Lancer Policy would have required Lancer to treat Jack Hitts like an actual insured while driving covered autos with permission.[1] But covered autos must be "specifically described" in the Lancer Policy, which means they are only those tractors and trailers actually listed in the declarations section and for which a premium charge is shown. The 2002 Freightliner tractor was not declared in the Lancer Policy. Therefore, the Freightliner tractor was not, in fact, a covered auto, despite that the MCS-90 endorsement requires unlisted vehicles to be treated like covered autos in order to satisfy a judgment against the named motor carrier in cases of public liability. Since no covered auto was involved in the accident, Lancer need not defend Jack Hitts in the underlying litigation on

---

[1] The Court assumes for purposes of this motion that Jack Hitts used the truck with Mannes Trucking's permission.

this basis.

Even if Jack Hitts qualified for coverage under the Lancer Policy while driving a covered auto with permission, which he does not, he still would not be an actual insured. And he certainly would not be an insured within the more narrow meaning of that term as contemplated in the federal regulations with respect to an MCS-90 endorsement. These two largely distinct bases for coverage, which do not cover Jack Hitts under the Lancer Policy independently, do not somehow cancel one another out to create coverage when considered in tandem.

The FMCSA's enforcement guidance reinforces a definition of "insured" that limits its meaning to motor carriers named in the policy. In fact, the FMCSA believes this construction of insured within the context of an MCS-90 endorsement is so clear that the agency declined to act on a recent petition to further clarify the term as used in the regulations. The FMCSA explained that the "petitioners contended changes were necessary in light of Federal and State court decisions that they claimed misconstrued Form MCS-90 to require insurance companies to pay damages for negligent operation of a vehicle owned by the insured motor carrier but not covered by its insurance policy" and in some cases "even when no judgment had been obtained against the insured motor carrier." Regulatory Guidance for Forms Used To Establish Minimum Levels of Financial Responsibility of Motor Carriers, 70 Fed. Reg. 58065, 58066 (effective Oct. 5, 2005). The Petitioners thus sought "to have the agency clarify that the word 'insured' in the Form MCS-90 means 'named insured.'" Id. The FMCSA responded that this concern could be "adequately addressed . . . . through formal agency guidance." Id. The regulatory guidance reiterates that the proper definition of insured in this context is found in 49 C.F.R. § 387.29 and

concludes that "Form[] MCS-90 . . . [is] not intended, and do[es] not purport, to require insurance companies or sureties to satisfy a judgment against any party other than the motor carrier named in the endorsement or its fiduciary." Id.

In addition, the context of the enabling statute for the MCS-90 endorsement suggests that it only impacts the registered motor carrier. The statute's stated purpose is to require insurance that will cover "each final judgment against the registrant." 49 U.S.C. § 13906(a)(1). Of course, the "registrant" is the registered motor carrier. In this case, only Mannes Trucking meets the criteria the drafters of the statute intended to cover.

Courts have also interpreted the predecessor endorsement to the MCS-90–known as a BMC-90 endorsement–as applying only to the named insured, no matter the terms of the insurance policy. See, e.g., Wellman v. Liberty Mut. Ins. Co., 496 F.2d 131, 139 (8th Cir. 1974) (noting that "[i]t is one thing to hold that a motor carrier is absolutely liable–based on the Interstate Commerce Act–for injuries resulting from the negligent operation of vehicles leased to it, but it seems an unjustified and illogical leap to hold that an insurance company–whose sole obligation rests on contract–should be bound to pay a judgment for others who are not mentioned in the [Interstate Commerce Commission] . . . and who are specifically excluded by the language of the policy").

Finally, the other methods provided for in the statute that allow a registered motor carrier to satisfy its financial responsibility further evidence that the MCS-90 endorsement does not create coverage for unnamed drivers. See 49 C.F.R. § 387.7(d). For instance, Mannes Trucking could have satisfied the statute's mandate by choosing to issue a surety bond or to self-insure by order of the FMCSA. Id. Although a trucking company's choice to issue a surety

bond or self-insure would achieve the same public policy goals and be equally as appropriate in a legal sense as the MCS-90 endorsement, neither of these two options would implicate the legal question in this case. In other words, had Mannes Trucking chosen to self-insure or issue a surety bond as its preferred means for satisfying its financial responsibility, no issue would even arise as to whether Jack Hitts might be considered an insured because there would be no MCS-90 endorsement to construe. A contrary result here seems arbitrary when based solely on Mannes Trucking's choice of the MCS-90 endorsement among these three equally permissible methods for satisfying its federally mandated financial responsibility for public liability.

The Court has found no Eleventh Circuit decision that addresses this issue. The Fifth Circuit and two district courts in nearby circuits, however, have recently dealt with the matter. Ooida Risk Retention Group, Inc. v. Williams, 579 F.3d 469 (5th Cir. 2009); Sentry Select Ins. Co. v. Thompson, 665 F. Supp. 2d 561 (E.D. Va. 2009); Armstrong v. United States Fire Ins. Co., 606 F. Supp. 2d 794 (E.D. Tenn. 2009). Those decisions all contained the same conclusion that, as outlined above, an MCS-90 endorsement applies solely to the motor carrier named in an insurance policy. The Court finds their reasoning persuasive authority in this case.

The Fifth Circuit held that an MCS-90 endorsement does not function to indemnify employees of the named insured even when they are acting in the scope of their employment. Williams, 579 F.3d at 479. The opinion further noted that the public policy purpose of the endorsement is a completely separate issue from the question of coverage. Id. The two district court opinions rely heavily on the statute and regulations that provide the context for the MCS-90 endorsement. Thompson, 665 F. Supp. 2d at 565-66; Armstrong, 606 F. Supp. 2d at 808-813.

Thompson reaches the conclusion that only a judgment against the motor carrier named in the insurance policy obligates the insurer to issue a payment pursuant to the MCS-90 endorsement. Id. at 568. Armstrong refuses to interpret the MCS-90 endorsement as requiring the insurer to pay a judgment against a party who leased the trailer at issue from the motor carrier named in the insurance policy. Id. at 823.

Two circuits have reached a contrary result, which in no way binds this Court. See Adams v. Royal Indemnity Co., 99 F.3d 964 (10th Cir. 1996); John Deere Ins. Co. v. Nueva, 229 F.3d 853 (9th Cir. 2000). Nonetheless, the court in Adams considered a driver with permission an insured whether or not named in the policy. Adams, 99 F.3d at 970. The Nueva court similarly found that the definition of "insured" includes permissive users of non-covered autos. Nueva, 229 F.3d at 859. These decisions, however, did not discuss the unambiguous statutory and regulatory framework that restrict the definition of "insured" to the named motor carrier in the context of MCS-90 endorsements. See Regulatory Guidance for Forms Used To Establish Minimum Levels of Financial Responsibility of Motor Carriers, 70 Fed. Reg. 58065, 58066 (effective Oct. 5, 2005). An agency's interpretation of a statute for purposes of enforcement guidance that is not subject to public notice and comment is entitled to respect to the extent it has the persuasive power. Christensen v. Harris County, 529 U.S. 576, 587 (2000). As explained above, the Court finds the agency's interpretation persuasive. Since Adams and Nueva do not even consider the definition of insured in 49 C.F.R. § 387.5, they carry little persuasive weight in this case.

As already explained and in light of persuasive case law on the issue, the Court concludes that the MCS-90 endorsement cannot function to join an unnamed party to the

underlying litigation.  The MCS-90 extends public liability coverage to unlisted autos, not to unnamed insureds.  Construing the Lancer Policy to conform with Defendants' gloss quickly devolves into a tedious exercise that requires stretching the plain language of the policy in two different directions.  The MCS-90 endorsement first converts unlisted vehicles into covered autos for purposes of public liability.  According to Defendants, the primary policy then expands the reach of the MCS-90 endorsement even farther: from named policyholders who drove unlisted vehicles to unnamed permissive drivers who drove unlisted vehicles.  Construing the Lancer Policy in this manner undermines the contracting parties' bargained for insurance coverage, after the fact, by contradicting the plain understanding of who qualifies as an insured in the context of the MCS-90 and related federal regulations.

## CONCLUSION

For the reasons explained above, the Court finds that Jack Hitts cannot be considered an insured and, as a matter of law, has no coverage under the Lancer Policy.  Therefore, Lancer's Motion for Summary Judgment is hereby **GRANTED**.

**SO ORDERED,** this 21st day of December, 2010.

S/ C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT

THC